UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.  07-80296 CIV-HURLEY/VITUNAC

MICROSOFT CORPORATION,
a Washington corporation,

        Plaintiff,

    v.

BIG BOY DISTRIBUTION LLC, a Florida
limited liability company; STEVEN
BLACKBURN; EDUCATIONAL SOLUTIONS
AND TECHNOLOGICAL DEVELOPMENT
INC., d/b/a EDUCATIONAL SOLUTIONS and
EDSOL, a Jordanian company; and MAHMOUD
SHADID,

        Defendants.

**MICROSOFT CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AGAINST BIG BOY
DISTRIBUTION AND STEVEN BLACKBURN**

        Plaintiff Microsoft Corporation ("Microsoft") submits this Reply in further support of its

Motion for Partial Summary Judgment as to Liability Against Big Boy Distribution and Steven

Blackburn (Dkt. # 55-1).  Defendants Steven Blackburn ("Mr. Blackburn") and Big Boy

Distribution ("Big Boy") (collectively, the "Big Boy Defendants") have failed to demonstrate a

genuine issue of material fact on Microsoft's claims against them for infringing importation of

copyrighted works and copyright infringement, and Microsoft is therefore entitled to summary

judgment as to liability in its favor.

## I.      ARGUMENT

**A.    The Big Boy Defendants Have Failed To Raise Genuine Disputes Of Material Facts
On Issues Dispositive Of Microsoft's Claims Against Them.**

1

Microsoft's Statement of Material Facts in Support of its Motion for Partial Summary Judgment as to Liability (Dkt. # 56-1)[1] and the evidence cited in that statement amply demonstrate the following facts:

- The Microsoft Student Media software the Big Boy Defendants admitted importing to and distributing in the United States was manufactured abroad and was not authorized or licensed for importation to the United States.  SF ¶¶ 5-7, 9-13, 15.

- The Microsoft Student Media software the Big Boy Defendants admitted importing to and distributing in the United States is not sold, but rather distributed pursuant to a highly restrictive license that permits its use only by qualified educational users.  SF ¶¶ 2-4, 9-14.

- Microsoft was never paid for the Microsoft Student Media software the Big Boy Defendants admitted importing to and distributing in the United States.  SF ¶ 13.

- Mr. Blackburn personally participated in the infringing importation and distribution of Microsoft Student Media software, had the right and ability to supervise the infringing activity, and had a direct financial interest in that activity.  SF ¶¶ 1, 6-7.

Local Rule 7.5.D provides as follows:

> **Effect of Failure to Controvert Statement of Undisputed Facts.**  All material facts set forth in the movant's statement filed and supported as required by Local Rule 7.5.C will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record.

The Big Boy Defendants failed to controvert any of the above facts in their own statement of facts, and therefore these facts are now "deemed admitted."  Local Rule 7.5.D.

Even setting aside the Big Boy Defendants' failure to controvert the facts established by Microsoft in a statement of disputed facts, no actual evidence submitted by the Big Boy Defendants calls into question these facts.  *See* Declaration of Steven Blackburn in Opposition to Microsoft's Motions for Summary Judgment (Dkt. # 83-1); Declaration of Warren Do (Dkt. # 84).  Instead of setting forth facts that put at issue Microsoft's facts, the Big Boy Defendants

---

[1] In the interest of brevity, in this brief Microsoft refers to the paragraph within the Statement of Material Facts ("SF") that contains the fact asserted and its citation in the record.  Such paragraphs are cited as "SF ¶ __."

offer <u>speculation</u>.  *See, e.g.*, Big Boy Defendants' Opposition at 4 ("[W]hile Ms. Johnson describes Microsoft's standard practices, she fails to state that Edsol received these copies of software pursuant to that standard practice."); *id.* at 19 (Microsoft "does not claim that it is paying any tangible personal property tax on [the discs] and it does not claim it is bearing any risk of loss or insurance expense with regard to the copies.").  The reason the Big Boy Defendants' have not offered facts is plain – the actual facts that are relevant to this matter demonstrate that the Big Boy Defendants have imported Microsoft software in violation of Section 602(a) of the Copyright Act and that they have infringed upon Microsoft's copyrights by distributing that software in the United States.  The Big Boy Defendants' reliance on speculation, as opposed to facts, is insufficient to prevent summary judgment.  *See, e.g.*, *Cincinnati Ins. Co. v. Metropolitan Props. Inc.*, 806 F.2d 1541, 1544 (11th Cir. 1986) ("contentions which are based on mere speculation and conjecture are . . . impermissible"); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985) ("an inference based on speculation and conjecture is not reasonable").

**B.    The Big Boy Defendants' Importation Of Microsoft Software Made And Licensed For Use Abroad Constitutes Copyright Infringement Pursuant To 17 U.S.C. § 602(a).**

The Big Boy Defendants dismiss as "neither thoroughly, nor well reasoned" the numerous courts to have considered whether the First Sale Defense applies to a claim for unauthorized importation of a copyrighted work when that copyrighted work is manufactured and licensed for use abroad.  *See* Big Boy Defendants' Opposition at 8.  Indeed, the Big Boy Defendants appear to contend that the <u>Supreme Court was wrong</u> in articulating how <u>the First Sale Defense would not apply to copyrighted works manufactured outside the United States</u>.  *See* Big Boy Defendants' Motion for Partial Summary Judgment at 23 ("Contrary to the third example given in *Quality King*, 523 U.S. at 145 and relied upon in *Swatches* [sic], 454 F. Supp. 2d at 1254, it is the first and second of the three example [sic] given therein that comport with the plain language of the Act, the constitution and property law.").

The Big Boy Defendants cite <u>not a single case</u> in their opposition to Microsoft's summary judgment motion for the proposition that the First Sale Defense applies to a 17 U.S.C. § 602(a) claim for copyrighted works manufactured abroad.  In their own motion for partial summary judgment, the Big Boy Defendants cited only one case – *Red Baron-Franklin Park, Inc. v. Taito Corp.*, 1988 WL 167344 (E.D. Va. 1988) – in which a court found that the First Sale Defense could apply in this context.  In addition to being overruled on other grounds, *Red Baron* was decided ten years before the Supreme Court noted that 17 U.S.C. § 602(a) could apply to "sold" copies of copyrighted works "that were 'lawfully made' not under the United States Copyright Act, but instead, under the law of some other country."  *Quality King Distribs. Inc. v. L'anza Research Int'l Inc.*, 523 U.S. 135, 147 (1998).

The overwhelming weight of authority stands against *Red Baron*, as numerous other courts have found that the First Sale Defense does not apply to copyrighted works manufactured abroad because such works were not made "under this title."  *See, e.g.*, *Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245 (S.D. Fla. 2006); *U2 Home Entmt. v. Gatechina.Com, Inc.*, 2007 WL 951291, at *4-*5 (N.D. Cal. 2007); *UMG Recs., Inc. v. Disco Azteca Distribs.*, 446 F. Supp. 2d 1164, 1172-73 (E.D. Cal. 2006); *UMG Recs., Inc. v. Norwalk Distribs.*, 2003 WL 22722410, at *3-*4 (C.D. Cal. 2003); *Lingo Corp. v. Topix, Inc.*, 2003 WL 223454, at *4 (S.D.N.Y. 2003); *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 481-82 (9th Cir. 1994); *BMG v. Perez*, 952 F.2d 318, 319 (9th Cir. 1991); *T.B. Harms Co. v. Jem Recs., Inc.*, 655 F. Supp. 1575, 1583 (D.N.J. 1987); *see also* W. Patry, *Copyright Law and Practice*, 166-70 (1997) ("lawfully made under this title" in the "first sale" defense, 17 U.S.C. § 109(a), means "lawfully made in the United States") (cited in *Quality King*, 523 U.S. at 154 (Ginsburg, J., concurring)).

Indeed, <u>two judges in this District</u> have rejected the very argument the Big Boy Defendants advance here.  *See Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245 (S.D. Fla.) (Huck, J.); Order Granting Microsoft's Motion for Preliminary Injunction (Dkt. # 50) in *Microsoft Corp. v. Technology Enterprises, et al.*, No. 06-CIV-22880-HOEVELER/BROWN (S.D. Fla.).  Microsoft respectfully submits that the Honorable Paul Huck's *Swatch* opinion is,

4

despite the Big Boy Defendants' contention to the contrary, both thoroughly and well-reasoned, as are the opinions of the numerous courts cited above that have found the First Sale Defense simply to not apply to 17 U.S.C. § 602(a) claims for copyrighted works manufactured abroad.

**C.     The First Sale Defense Does Not Apply To Microsoft Student Media Software.**

The Big Boy Defendants' contention that the First Sale Defense applies to Microsoft's 17 U.S.C. § 602(a) claim is wrong as described above.  The Big Boy Defendants also contend that the First Sale Defense shields their illicit distribution of Microsoft Student Media software.  The First Sale Defense, however, applies only to <u>actual sales</u>.  *Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1089 (N.D. Cal. 2000).  "Accordingly, a copyright owner does not forfeit his right of distribution by entering into a licensing agreement."  *Id.*

**1.     The Big Boy Defendants Bear The Burden Of Proving That The Microsoft Student Media Software Was "Sold."**

The Big Boy Defendants disregard that the burden of proving an "actual sale" for the First Sale Defense falls squarely on them.  *See Microsoft Corp. v. Harmony Computers & Elecs.*, 846 F. Supp. 208, 212 (E.D.N.Y. 1994); *MapInfo Corp. v. Spatial Re-Eng'g Consult.*, 2004 WL 26350, at *3 (N.D.N.Y. 2004); *see also Novell, Inc. v. Unicom Sales*, 2004 WL 1839117, at *8 (N.D. Cal. 2004) ("Because the defendant 'clearly has the particular knowledge of how possession of the particular copy was acquired,' the defendant has the burden of proving the applicability of the first sale doctrine." (quoting 17 U.S.C. § 109, Historical Note)).

The Big Boy Defendants have offered <u>no evidence – only speculation</u> – that the Microsoft Student Media software they have admitted importing and distributing was "sold." Having failed to come forward with any evidence that this software was "sold," the Big Boy Defendants' First Sale Defense fails.

The Big Boy Defendants have set forth evidence for the proposition that Mr. Blackburn <u>thought</u> EdSol had the right to sell the Microsoft Student Media software to anyone it chose and that Mr. Blackburn <u>thought</u> he had the right to import and distribute that software.  *See, e.g.*, Blackburn Decl. in Opp. to Motions for Summary Judgment ¶¶ 15-19.  But what Mr. Blackburn

thought is simply not relevant to the question of liability for copyright infringement.  To establish its copyright infringement claim, Microsoft need only show (1) that it owns valid copyrights in the works at issue, and (2) that the Big Boy Defendants encroached upon Microsoft's exclusive rights under the Copyright Act.  *See* 17 U.S.C. § 501; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The Big Boy Defendants' knowledge or intent is irrelevant to their liability for copyright infringement.  *See* 17 U.S.C. § 501(a); *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198-99, 51 S. Ct. 410, 412, 75 L.Ed. 971 (1931); *Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 433, 436 (S.D. Fla. 1995).

    2.    **Microsoft Student Media Software Is Not "Sold."**

The Big Boy Defendants rely upon a single case, *SoftMan Prods. Co. v. Adobe Sys. Inc.*, 171 F. Supp. 2d 1075 (C.D. Cal. 2001), which they quote at extraordinary length, for the proposition that the Microsoft software at issue here is "sold."  *See* Big Boy Defendants' Opposition at 10-19 (block quoting *SoftMan*).  The Big Boy Defendants declined to inform this Court that the overwhelming majority of courts to have considered the issue have found that software is generally licensed, not sold, precluding the First Sale Defense.[2]  "[T]he first sale doctrine rarely applies in the software world because software is rarely 'sold.'"  *Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 786 n.9 (9th Cir. 2006); *see also* Raymond T. Nimmer, *Law of Computer Tech.* § 1:112 n.4 (2006) ("The very few lower court cases that hold [that software is sold rather than licensed] are outside the mainstream and inconsistent with commercial practice.").  Even if this Court were to ignore this overwhelming weight of authority and apply the minority *SoftMan* analysis, the Court would find that the software at issue here is licensed, not sold.

All Microsoft Student Media software, including that the Big Boy Defendants have admitted importing and distributing, is plainly marked with the following copyright warning:

---

[2] *See* Raymond T. Nimmer, *Law of Computer Tech.*, § 1:112 n.3 (2006) (listing 15 federal court cases in which software was recognized to have been licensed, not sold); *see also id.* n.4 (noting that of the "few" courts to have suggested that software is distributed by sale, not license, "two were reversed on appeal [and] two were vacated").

All use subject to volume license agreement.  Do not make illegal copies of this disc.  **Not for retail or OEM Distribution.  Not for resale.**

SF ¶ 4.

As indicated on the discs, use and distribution of all Student Media software requires and is governed by a valid volume license agreement. SF ¶¶ 2-3; Reply Declaration of Tamara Johnson in Support of Microsoft's Motion for Partial Summary Judgment as to Liability ,("Johnson Reply Decl.") ¶ 5, attached herein as Exhibit "A."  The Microsoft Student Media software the Big Boy Defendants have admitted importing and distributing was distributed pursuant to an agreement between Microsoft Ireland Operations Limited, a Microsoft Corporation affiliate, and the Kingdom of Jordan, specifically the Jordanian Ministry of Education.  Johnson Reply Decl. ¶ 5.  Dr. Khaled Toukan, the Minister of Education and Higher Education for the Kingdom of Jordan, entered the Jordanian Ministry of Education Agreement on behalf of the Kingdom of Jordan.  *Id.*

Pursuant to the Jordanian Ministry of Education Agreement (the "MOE Agreement"), the Ministry of Education and its qualified educational users are authorized to use certain Microsoft software.  *Id.* ¶ 6 & MOE Agreement ¶ 1.  Qualified educational users of this special software are limited to educational institutions and their administrative offices.  *Id.* ¶ 6 & MOE Agreement sch. A.  Only qualified educational users are licensed to use the software under the MOE Agreement.  *Id.* ¶ 6 & MOE Agreement ¶ 1.  Under the MOE Agreement, the right to use the Microsoft software is for a term of three years, extendable at the option of the Ministry of Education for an additional three years.  *Id.* ¶ 6 & MOE Agreement Amendment.  No ownership rights in any Microsoft software are transferred pursuant to the Jordanian Ministry of Education Agreement.  *Id.* ¶ 6 & MOE Agreement ¶ 7.  The Jordanian Ministry of Education and its Qualified Educational Users are not authorized to transfer the licenses to use Microsoft software except under very limited circumstances and upon Microsoft's written consent.  *See id.* ¶ 6 & Amendment ¶ 7.

Under to the Jordanian Ministry of Education Agreement, the Ministry of Education was authorized to acquire Microsoft Student Media software for its faculty, staff, and students.  *Id.* ¶

7 & MOE Agreement ¶ 9.  The per license fee paid for a qualified educational user to use both the Microsoft Windows XP and Microsoft Office 2003 software programs was approximately $18.00.  *Id.* ¶ 7.  One of the ways by which Microsoft provides Microsoft software to licensed users is to permit them to download that software from a Microsoft Authorized Education Reseller ("AER") via the Internet.  *Id.*  However, particularly in the developing world, Internet bandwidth limitations may make downloading software difficult.  *Id.*  Microsoft therefore also offers Microsoft software on Student Media discs.  *Id.*  Such Student Media software is offered at prices vastly below the cost of fully packaged retail product.  *Id.* & SF ¶ 2.  The Microsoft Office 2003 Pro and Microsoft Windows XP Pro Student Media software the Big Boy Defendants imported from Jordan was initially distributed under the Jordanian Ministry of Education Agreement for a negligible $4.00 per copy, a cost in addition to the per license fee described above.  *Id.* ¶ 7.

Even setting aside the prevailing jurisprudence that software is not "sold," and instead applying the analysis set forth in the decidedly minority *SoftMan* case, the circumstances of Microsoft's distribution of Student Media software show that this software is not "sold."  Most importantly, this software is not distributed in the retail channel, unlike the software at issue in *SoftMan*.  *See SoftMan*, 171 F. Supp. 2d at 1080 & n.3.  As explained above, distribution of Microsoft Student Media software bears no resemblance to retail "sales."  Further, the *SoftMan* Court found significant that the "purchaser commonly obtains a single copy of the software, with documentation, for a single price, which the purchaser pays at the time of the transaction, and which constitutes the entire payment for the 'license.'"  *Id.* at 1085.  In contrast, the per license fee for a qualified educational user under the MOE Agreement is approximately $18 for both the Microsoft Windows XP and Microsoft Office 2003 software programs.  Johnson Reply Decl. ¶ 7.  The Student Media discs, which are offered as a means by which eligible educational users can get the software on their computers, is offered for the negligible cost of approximately $4 per unit.  *Id.* ¶ 7.  Additionally, per the terms of the MOE Agreement, the right to use the Microsoft

software is time limited, not perpetual.[3]  *Id.* ¶ 6 & Amendment.  Therefore, even under the

minority analysis set forth in *SoftMan*, this Court should conclude that Microsoft Student Media

software is licensed, not sold.

> **3.     The Big Boy Defendants Are Bound By The Distribution And Use Provisions Of The Licensing Agreements Governing Student Media.**

The Big Boy Defendants cite irrelevant authority for the proposition that they may

distribute software irrespective of the terms of the end user license agreement ("EULA") that

accompanies that software and discuss that EULA at great length.  *See* Big Boy Defendants'

Opposition at 16-30.  The real question is not whether or not the Big Boy Defendants are bound

by the EULA, but rather whether they may obtain rights beyond those granted in Jordanian

Ministry of Education Agreement pursuant to which the software originally was distributed.[4]

The Big Boy Defendants' argument that because EdSol was authorized to distribute

Microsoft Student Media software, EdSol "owned" that software is simply wrong.  Under the

Jordanian Ministry of Education Subscription Enrollment, which is a part of the MOE

Agreement, EdSol was authorized to distribute software <u>to Jordanian Ministry of Education

qualified educational users</u>.  Johnson Reply Decl. ¶ 8 & Subscription Enrollment ¶ 9.  EdSol

acknowledged that it was the reseller "under the agreement."  *Id.*  Indeed, on June 8, 2006, a

Microsoft affiliate sent a letter to EdSol stating that EdSol was entitled to sell "software media to

the student PC's <u>under the Ministry of Education of Jordan Agreement</u> . . . as <u>per the Terms and

conditions of the Agreement</u>."  *Id.* ¶ 9 & Ex. 2 (emphases added).  EdSol simply was not

authorized to distribute Microsoft Student Media software to users other than qualified

educational users.  *See* SF ¶¶ 3, 13; Johnson Reply Decl. ¶¶ 8, 9; Ex.

---

[3] *Compare with SoftMan*, 171 F. Supp. 2d at 1085 (finding significant for purposes of establishing a sale that "[t]he license runs for an indefinite term without provisions for renewal").

[4] Setting aside that the Jordanian MOE Agreement is clear that the Student Media may only be distributed to qualified educational users, the Big Boy Defendants' EULA arguments are misplaced.  For example, Paragraph 10 of the EULA provides that software identified as "Not for Resale," as was the software at issue here "may not be sold or otherwise transferred for value."  Paragraph 11 of the EULA also states that academic versions of software, such as the Student Media at issue here, may be used only by "Qualified Educational Users."

2; & Subscription Enrollment ¶ 9.  Further, because EdSol never paid for the software, it could

not have been "sold" to EdSol.  SF ¶ 13; Johnson Reply Decl. ¶ 7.

     Because the software at issue here was not "sold" to EdSol or anyone else, the Big Boy

Defendants cannot obtain rights beyond those granted in the license:

> "[E]ven an unwitting purchaser who buys a copy in the secondary market can be
> held liable for infringement if the copy was not the subject of a first sale by the
> copyright holder."  *See American Int'l Pictures, Inc. v. Foreman*, 576 F.2d 661,
> 664 (5th Cir. 1978).  "Thus unless title to the copy passes through a first sale by
> the copyright holder, subsequent sales do not confer good title."  *Id.*

*Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *13 (N.D. Cal. 2004); *see also*

*Microsoft Corp. v. Harmony Comps. & Elecs.*, 846 F. Supp. 208, 212 (E.D.N.Y. 1994) (same).

**D.     Steven Blackburn Is Liable For Copyright Infringement.**

     In the Eleventh Circuit "an individual, including a corporate officer, who has the ability

to supervise infringing activity and has a financial interest in that activity, or who personally

participates in that activity is personally liable for the [copyright] infringement."  *Playboy*

*Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438, 441-42 (S.D. Fla. 1995) (citing

*Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th

Cir. 1985)).  Although Mr. Blackburn has declared that "[a]ll acts done by me in connection with

importation of the copies at issue were done in my capacity as an employee of Big Boy

Distribution," he also admitted that he is the owner of Big Boy.  *See* Blackburn Decl. ¶¶ 3-4.

And Mr. Blackburn has failed to identify an issue of fact regarding his personal participation in

the infringing conduct.  Microsoft is therefore entitled to a determination that Mr. Blackburn is

personally liable for copyright infringement.

## II.     CONCLUSION

     This Court should enter partial summary judgment finding the Big Boy Defendants liable

for (a) unlawful importation of Microsoft software, and (b) violation of Microsoft's exclusive

right of distribution of its copyrighted works.  The Court should also permanently enjoin the Big

Boy Defendants from any future infringement of Microsoft's copyrights.

DATED this 19th day of February, 2008.


s/Gustavo A. Bravo
Richard C. Hutchison
Florida Bar No. 709360
Gustavo A. Bravo
Florida Bar No. 551287
Email: rick.hutchison@hklaw.com
        gustavo.bravo@hklaw.com
HOLLAND & KNIGHT LLP
One East Broward Boulevard, Suite 1300
Fort Lauderdale, Florida 33301
Phone: (954) 525-1000
Fax: (954) 463-2030


Scott T. Wilsdon (*pro hac vice*)
John H. Jamnback (*pro hac vice*)
Jeremy E. Roller (*pro hac vice*)
Email: wilsdon@yarmuth.com
        jjamnback@yarmuth.com
        jroller@yarmuth.com
YARMUTH WILSDON CALFO PLLC
925 Fourth Avenue, Suite 2500
Seattle, Washington 98104
Phone: (206) 516-3800
Fax: (206) 516-3888

Attorneys for Plaintiff Microsoft Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of February, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all counsel of record identified on the below service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Gustavo A. Bravo
Gustavo A. Bravo
Florida Bar No. 551287

## SERVICE LIST

*Microsoft Corporation v. Big Boy Distribution LLC, et al.*
**Case No. 07-80296-CIV-HURLEY/VITUNAC**

James D. Ryan
Timothy P. O'Neill
Ryan & Ryan Attorneys P.A.
631 U.S. Highway One, Suite 100
North Palm Beach, FL  33408
Phone: 561-841-3420
Fax:    561-841-3424
Email: toneill@attyryans.com
(Via CM/ECF)

# 5135453_v1